UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALIK YUSEF LEE,
    Plaintiff,

v.

TOYOTA MOTOR SALES USA INC, et al.,
    Defendants.

Case No. 16-cv-03195-JCS

**ORDER REVIEWING COMPLAINT UNDER 28 U.S.C. § 1915 AND DISMISSING COMPLAINT IN PART WITH LEAVE TO AMEND**

## I.     INTRODUCTION

Plaintiff Alik Yusef Lee filed this pro se action against Defendants Toyota Motor Sales, U.S.A., Inc. ("Toyota"), Millennium Capital and Recovery Corporation ("Millennium"), and Digital Dog Auto Recovery ("DD"), asserting claims under the federal Fair Debt Collection Practices Act ("FDCPA") and state law based on Defendants' alleged wrongful repossession of Plaintiff's car. Having previously granted Plaintiff's Application to Proceed in Forma Pauperis, the Court now considers whether Plaintiff's Complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B), which requires dismissal of an in forma pauperis complaint that is (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. *See Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996). Plaintiff has consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Court dismisses Plaintiff's complaint with leave to amend. The Case Management Conference set for **September 23, 2016** is vacated.

## II. COMPLAINT

Plaintiff alleges that on June 2, 2016, his 2011 Toyota Camry was repossessed by DD from his home in El Sobrante, California. Compl. (dkt. 1) ¶ 1. According to Plaintiff, "[DD] stated that the Plaintiff's vehicle was repossessed on orders from [Millennium], an agent of [Toyota]." *Id.* ¶ 2. Plaintiff attaches to the Complaint a "Personal Effects Inventory" report for a repossessed 2011 Toyota Camry, dated June 3, 2016, which lists DD as the "Recovery Company," Millennium and Toyota as the "Client," and Lee as the "Debtor." *See* Ex. A. The form is signed by Lee and a witness and reflects that the personal property in the vehicle was returned to Lee on June 3, 2016. *Id.*

Plaintiff argues that the repossession on June 2, 2016 was wrongful because his car payment was not due until June 5, 2016. Compl. ¶¶ 3–4. Plaintiff attaches a copy of a Toyota billing statement sent to him on May 19, 2016 showing that he had a balance of $1,459.97 due on June 5, 2016. *See* Ex. B.

Plaintiff also alleges that DD damaged his driveway and possibly his car during the repossession. Compl. ¶ 5 & Ex. C.

Plaintiff alleges that between June 6 and June 8, 2016, he faxed or emailed Demand Letters to Toyota, Millennium, and DD, seeking return of his vehicle and financial damages. *Id.* ¶¶ 7–12.

Plaintiff filed this Complaint on June 9, 2016, asserting claims for wrongful conversion and repossession under state law and for violations of the FDCPA. *Id.* ¶ 3. Plaintiff demands a jury trial on all issues and seeks a judgment in excess of $20,000 for the value of the car, emotional distress and punitive damages, and compensation for any damage to the car. He also seeks an injunction requiring that Defendants immediately return his car, cleaned and detailed, to his home and barring them from taking any additional actions in connection with the car.

## III. ANALYSIS

### A. Legal Standard under 28 U.S.C. § 1915

If a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is permitted to proceed in forma pauperis, the court must undergo a preliminary screening of the complaint and dismiss any claims which: (1) are frivolous and malicious; (2) fail to state a claim upon which

1  relief may be granted; or (3) seek monetary relief from a defendant who is immune from such

2  relief. § 1915(e)(2)(B); *see Marks*, 98 F.3d at 495. A complaint is "frivolous" under § 1915

3  where it is "lacking arguable basis in law or in fact" and a complaint may be frivolous where there

4  is no subject matter jurisdiction. *See Pratt v. Sumner*, 807 F.2d 817, 819 (9th Cir. 1987).

5        To state a claim for relief, a plaintiff must make "a short and plain statement of the claim

6  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Diaz v. Int'l Longshore*

7  *and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007). In determining whether a

8  plaintiff fails to state a claim, the court takes "all allegations of material fact as true and

9  construe[s] them in the light most favorable to the nonmoving party." *Cedars-Sinai Med. Ctr. v.*

10 *Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). However, "the tenet that

11 a court must accept a complaint's allegations as true is inapplicable to legal conclusions [and]

12 mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.*

13 *Twombly*, 550 U.S. 544, 555 (2007)), and courts "do not necessarily assume the truth of legal

14 conclusions merely because they are cast in the form of factual allegations." *Coto Settlement v.*

15 *Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (internal quotation marks omitted). The

16 complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state

17 a claim to relief that is plausible on its face." *Id.* at 678 (citing *Twombly*, 550 U.S. at 570).

18       Where the complaint has been filed by a pro se plaintiff, courts must "construe the

19 pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d

20 338, 342 (9th Cir. 2010). "A pro se litigant must be given leave to amend his or her complaint

21 unless it is absolutely clear that the deficiencies in the complaint could not be cured by

22 amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded on other grounds*

23 *by statute*, *as recognized in Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc); *see also*

24 *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc).

25     **B.**   **Subject Matter Jurisdiction**

26     As a preliminary matter, the Court addresses whether it has subject matter jurisdiction over

27 this action. "A federal court is presumed to lack jurisdiction in a particular case unless the

28 contrary affirmatively appears." *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003).

"Generally, original federal subject matter jurisdiction may be premised on two grounds: (1) diversity jurisdiction; or (2) federal question jurisdiction." *Rector v. Toyota Motor Credit Corp.*, No. 13-400 (KJN), 2013 WL 1331447, at *3 (E.D. Cal. 2013); *see also* 28 U.S.C. §§ 1331-1332.

Federal courts have diversity jurisdiction only where there is complete diversity of citizenship—no plaintiff is a citizen of the same state as any defendant—and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; *see Matao Yokeno v. Sawako Sekiguchi*, 754 F.3d 649, 652 (9th Cir. 2014). For purposes of determining diversity of citizenship, an individual person is deemed to be a citizen of the state in which he or she is domiciled, where domicile requires "fixed habitation or abode in a particular place" and "an intention to remain there indefinitely." *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986). A corporation is deemed to be a citizen of the state in which it was incorporated as well as the state in which its principal place of business is located. 28 U.S.C. § 1332(c)(1). "Principal place of business" refers to "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities"—the "'nerve center.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010). The "nerve center" will typically be found at the corporation's headquarters. *Id.* at 81.

Based on the allegations in the Complaint, there is not complete diversity of citizenship in this case. In particular, although the Complaint does not include any allegations that expressly address the state of citizenship of the parties, it lists only California addresses for Plaintiff and for Defendants Toyota and DD. Therefore, the existence of federal subject matter jurisdiction depends on whether Plaintiff's complaint raises a federal question.[1]

Federal courts may exercise federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "To determine whether an action arises under federal law, a court applies the well-pleaded complaint rule," which asks whether "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009) (internal

---

[1] The Court notes that the Complaint does not claim that there is diversity jurisdiction over this action; rather, it claims that there is federal jurisdiction on the basis that the "matter . . .involves violations of federal laws and rights." Compl. at 1.

4

quotation marks and citations omitted).  Thus, a suit "arises under" federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).

In his Complaint, Plaintiff asserts a claim under a federal statute, namely, the FDCPA. He does not invoke any other federal law or right.  Therefore, whether the Court has federal jurisdiction rests on whether Plaintiff states a valid claim under the FDCPA.  If he has stated a valid FDCPA claim against any defendant, the Court may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a); *see Raygor v. Regents of University of Minnesota*, 534 U.S. 533, 1004 (2002) ("[F]ederal courts deciding claims within their federal-question subject matter jurisdiction may decide state law claims not within their subject matter jurisdiction if the federal and state law claims derive from a common nucleus of operative fact and comprise but one constitutional 'case.'" (Internal quotation marks and citations omitted)).

Below, the Court addresses the sufficiency of Plaintiff's allegations in support of his FDCPA claim.  Because it finds that Plaintiff's FDCPA claim is sufficiently alleged as to two defendants, the Court concludes that it has subject matter jurisdiction over this action as to the FDCPA claim and the related state law claims as they are part of the same case or controversy.

  **C.**  **Whether Plaintiff States a Claim Under the FDCPA**

    **1. Overview of the FDCPA**

The FDCPA is a "remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006); *see also* 15 U.S.C. § 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.").  The FDCPA "prohibits debt collectors 'from making false or

misleading representations and from engaging in various abusive and unfair practices.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995)). The FDCPA is a strict liability statute that "makes debt collectors liable for violations that are not knowing or intentional," *Donohue*, 592 F.3d at 1030 (quoting *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008)), although there is a bona fide error affirmative defense, *see* 15 U.S.C. § 1692k(c). Because the FDCPA is a remedial statute, "it should be construed liberally in favor of the consumer, and, when in doubt, against debt collectors." *Heathman v. Portfolio Recovery Assocs., LLC*, No. 12-515 (IEG), 2013 WL 3746111, at *2 (S.D. Cal. 2013).

To state a claim under the FDCPA, a plaintiff must show that: (1) he is a consumer; (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a debt collector; and (4) the defendant violated one of the provisions of the FDCPA. *Freeman v. ABC Legal Servs., Inc.*, 827 F. Supp. 2d 1065, 1071 (N.D. Cal. 2011).

The FDCPA provisions at issue in this case are 15 U.S.C. §§ 1692a and 1692f. Section 1692a is the definitional provision of the FDCPA and defines the terms "creditor" and "debt collector." These definitions are critical because a "creditor" usually is not a "debt collector" for the purposes of the FDCPA (although it may be one under some circumstances) and because "only persons or entities established as 'debt collectors,' as provided in § 1692a(6), are subject to the FDCPA's restrictions." *Shannon v. Windsor Equity Grp., Inc.*, No. 12-1124 (JMA), 2014 WL 977899, at *5 (S.D. Cal. 2014) (citing *Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142, 1146 (9th Cir. 1998)). For the purposes of the FDCPA:

> (4) The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating the collection of such debt for another.
> ...
>
> (6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

6

owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include--
...
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (ii) concerns a debt which was originated by such person...

15 U.S.C. § 1692a.[2]

Section 1692f(6), cited above in § 1692a(6), states, in relevant part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> ...
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest...

15 U.S.C. §1692f.

The term "debt collector" thus includes "all 'third parties' who regularly collect consumer debts for others," even if they do "not gain possession of a debt, or personally benefit financially from the satisfaction of a debt . . . ." *Romine*, 155 F.3d at 1146 (internal quotations and citations omitted). On the other hand, a creditor collects on its own behalf for a debt that it originated and usually is not considered to be a "debt-collector." The one exception to this rule is that a creditor will be considered a "debt collector" for the purposes of the FDCPA when "in the process of collecting his own debts, [the creditor] uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6).

---

[2] Section 1692a(6) lists six specific exclusions from the term "debt collector." Only the exclusion contained in subsection (F) is relevant to the Court's analysis and therefore the Court has not included the other five exclusions here.

Although a repossession agency generally is *not* considered to be a "debt collector," 15 U.S.C. § 1692(a) creates a limited exception where the "principal purpose" of the business is the enforcement of security interests and it violates 15 U.S.C. §1692f(6) by dispossessing an individual of property where "there is no present right to possession." *See Vantu v. Echo Recovery, L.L.C.*, 85 F. Supp. 3d 939, 943 (N.D. Ohio 2015); *see also Montgomery v. Huntington Bank*, 346 F.3d 693, 700–01 (6th Cir. 2003) (holding that while "[a]n entity that enforces security interests (a repossession agency, for example) is generally not a 'debt collector' . . . in limited circumstances the FDCPA treats such an entity as a debt collector.").

These principals are illustrated in *Reid v. Toyota Motor Credit Corp.*, No. 12-7436 (PAC), 2013 WL 1397143 (S.D.N.Y. 2013), in which the court found that Reid, whose car had been repossessed by Payback Repo on instructions from Toyota after Reid had stopped making the lease payments on his Toyota Camry, failed to state a claim against Toyota under the FDCPA because "Toyota is his creditor, not a debt collector." 2013 WL 1397143, at *7. The court found that Toyota was a "creditor" under the FDCPA and not a "debt collector" because "Toyota is not in the principal business of debt collection," "was merely attempting to collect its own debt in its own name when it repossessed (or arranged for Payback Repo to repossess) the Camry," Reid's "debt was owed to Toyota (rather than to a third party)," and "Reid does not allege that Toyota used the name of a third party." *Id.* The court further found that the plaintiff had not stated a claim against the repossession agency because under the facts of that case there was a present right of possession. *Id*. at *7.

On the other hand, in *Vantu*, the court held that the plaintiff (Vantu) had stated valid claims under the FDCPA where Maddox, an employee/agent/contractor of Echo Recovery, tried to repossess Vantu's ex-husband's van. *Id.* at 941. When Vantu told Maddox that there had been a mistake and tried to drive the van to her ex-husband's house so that he could resolve the matter, Maddox threatened her with a gun and "physically battered Vantu while trying to take the keys to the van." *Id.* at 941–42. Because "a security-interest enforcer loses its right to present possession of the collateral if it breaches the peace" and a breach of the peace occurred, the court concluded that Echo had no right to present possession of the collateral and thus that Vantu had pleaded a

plausible violation of § 1692f(6)(A) of the FDCPA. *Id.* at 943–44.

Both the actual repossession company (the company that physically removes the vehicle, like Echo in *Vantu*) and the middleman between the creditor and repossession company have been held liable for violation of the FDCPA in cases of wrongful repossession. For example, in *Shannon v. Windsor Equity Group, Inc.*, Windsor Group entered into a service agreement with Ally Financial to locate a vehicle (a service known as "skip tracing") and arrange for its repossession. No. 12-CV-1124-W JMA, 2014 WL 977899, at *2 (S.D. Cal. Mar. 12, 2014) 2014 WL 977899, at *2. After locating an individual or item, a skip tracer either arranges for repossession or transfers the case back to the client. *Id.* Windsor Group's agreement with Ally Financial explicitly stated that Windsor Group "will not engage in collection activity under any circumstances." *Id.* Relying on *Romine*, where the Ninth Circuit found Western Union to be a debt collector when it helped creditors obtain debtors' telephone numbers, the *Shannon* court concluded that services like skip tracing "when used to aid or facilitate the collections process brings that service under the scope of the FDCPA." *Id.* at *6 (citing *Romine*, 155 F.3d at 1149). In both cases, the defendants "regularly" offered services that had the purpose of "aid[ing] or facilitat[ing] the collection process" and defendants "advertised their services for that very purpose." *Shannon*, 2014 WL 977899, at *7–8.

**2. Sufficiency of Allegations in Support of Plaintiff's FDCPA Claim**

As noted above, in order to state a claim under the FDCPA, Plaintiff must allege sufficient facts to show that: (1) he is a consumer, (2) the debt arises out of a transaction entered into for personal purposes, (3) Defendants are "debt collectors" under the FDCPA, and (4) Defendants violated a provision of the FDCPA. Based on the allegations in the Complaint, construed liberally, the Court can draw a plausible inference that Plaintiff is a consumer who borrowed money to purchase his car for personal purposes. As to Millenium and DD, the Court can also plausibly infer that these entities are debt collectors under the standards set forth above, and that they violated the FDCPA by repossessing Plaintiff's car before there was a present right to possession. *See Vantu v. Echo Recovery, L.L.C.*, 85 F. Supp. 3d 939, 943–44 (N.D. Ohio 2015); *Shannon v. Windsor Equity Grp., Inc.*, 2014 WL 977899, at *2. Therefore, the Court finds that

9

1    Plaintiff's FDCPA claim is sufficiently alleged as to those defendants.  Plaintiff does not,

2    however, allege sufficient facts to show that Toyota is a "debt collector" under the FDCPA.  *See*

3    *Reid v. Toyota Motor Credit Corp.*, No. 12-7436 (PAC), 2013 WL 1397143 (SDNY 2013).

4    While Toyota's role in Plaintiff's car's repossession is not clear from the face of the

5    Complaint, it appears that Toyota may fall under the "original creditor" exemption of 15 U.S.C. §

6    1692a(6)(F)(ii).  That exemption applies if Plaintiff purchased the car from Toyota and Toyota is

7    now seeking to collect on the debt in its own name.   Therefore, in order to state a valid FDCPA

8    claim against Toyota, Plaintiff must allege facts sufficient to show that Toyota falls within the

9    definition of a "debt collector" under the FDCPA.  Plaintiff will be given an opportunity to amend

10   his complaint to either add such allegations if he can or to drop Toyota as a defendant on the

11   FDCPA claim.

12   **D.   Whether Plaintiff States a Claim for Wrongful Conversion**

13   "Conversion is the wrongful exercise of dominion over the property of another.  The

14   elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the

15   property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and

16   (3) damages."  *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015) (internal quotation marks omitted).

17   "To mandate a conversion action 'it is not essential that plaintiff shall be the absolute owner of the

18   property converted but she must show that she was *entitled to immediate possession at the time of*

19   *conversion*.'"  *Hartford Fin. Corp. v. Burns*, 96 Cal. App. 3d 591, 598 (1979); *see also Rosenthal*

20   *v. McMann*, 93 Cal. 505, 508 (1892) (holding that it is not necessary that the plaintiff have legal

21   title in order to sue; possession alone is sufficient).  Once it is determined that a plaintiff has a

22   right to possession, he has standing to bring a conversion action.  *See Cerra v. Blackstone*, 172

23   Cal. App. 3d 604, 609 (1985).  Unjustified refusal to turn over possession on demand constitutes

24   conversion even where possession by the withholder was originally obtained lawfully.  *Id.*  "The

25   foundation for the action of conversion rests neither in the knowledge nor the intent of the

26   defendant.  It rests upon the unwarranted interference by defendant with the dominion over the

27   property of the plaintiff from which injury to the latter results."  *Byer v. Canadian Bank of*

28   *Commerce*, 8 Cal. 2d 297, 300 (1937).

In *English v. Ralph Williams Ford*, Ralph Williams Ford, a new car dealer that had transferred a Ford station wagon to a used car dealer in return for a draft and a receipt that stated that it had not been paid, arranged for Key Auto Recovery, Inc. to repossess the station wagon from the Englishes, who had purchased it from the used car dealer, after the used car dealer failed to pay Ralph Williams Ford. 17 Cal. App. 3d 1038, 1042 (1971). The Englishes brought claims for conversion against Ralph Williams Ford, Key Auto Recovery, and the bank that financed the purchase. *Id.* at 1045. While the Englishes were awarded $704 in general and punitive damages against Ralph Williams Ford, the lower court denied them recovery against Key Auto Recovery and the bank. *Id.* at 1042. The Court of Appeal upheld the finding of conversion against Ralph Williams Ford, holding that "Ralph Williams Ford's repossession of the station wagon from the Englishes constituted a conversion unless such repossession was legally privileged." *Id.* at 1046. However, the court found that "denial of recovery against Key Auto Recovery, Inc. was clearly erroneous since Key repossessed the station wagon for Ralph Williams Ford," and reversed on that ground. *Id.* at 1049. Thus, the court concluded that the repossession by both Ralph Williams Ford and Key Recovery, Inc. was wrongful and constituted conversion. *See id.*

Based on the analysis in *English*, the Court finds that Plaintiff's allegations in support of his conversion claim are sufficient to survive the Court's review under § 1915 as to all three Defendants. Regardless of whether Plaintiff held title to the car, the fact that he had not defaulted on his payments (assuming the allegations in the Complaint to be true) is sufficient for the Court to infer that he had the right to possession at the time the car was repossessed by DD. This satisfies the first element of a conversion claim. The second element is satisfied by the act of repossession itself, since it was a "wrongful exercise of dominion over the property of another." *Lee*, 61 Cal. 4th at 1240. *English* demonstrates that wrongful repossession can be a way to exercise such "wrongful dominion." Finally, the third element is satisfied because Plaintiff alleges he suffered financial harm and mental anguish as a result of the repossession. Compl. ¶ 6. In addition, the Court concludes that the conversion claim is sufficiently pled as to all three Defendants, at least for the purposes of this preliminary review, as a reasonable inference can be drawn from the allegations in the Complaint that all three were responsible for the repossession.

## IV. CONCLUSION

For the reasons stated above, the Complaint is dismissed in part with leave to amend within thirty (30) days of the date of this Order to address the deficiencies identified above as to the FDCPA claim against Toyota. In the amended complaint, Plaintiff should address the deficiencies discussed above. If Plaintiff chooses not to amend, the court will have the complaint served, but the FDCPA claim against Toyota will not proceed.

Plaintiff, who is not represented by counsel, is encouraged to consult with the Federal Pro Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses for assistance if he continues to prosecute this action.  The San Francisco Legal Help Center office is located in Room 2796 on the 15th floor at 450 Golden Gate Avenue, San Francisco, CA 94102. The Oakland office is located in Room 470-S on the 4th floor at 1301 Clay Street, Oakland, CA 94612.  Appointments can be made by calling (415) 782-8982 or signing up in the appointment book located outside either office, and telephone appointments are available.  Lawyers at the Legal Help Center can provide basic assistance to parties representing themselves but cannot provide legal representation.

**IT IS SO ORDERED.**

Dated:  September 6, 2016

_____
JOSEPH C. SPERO
Chief Magistrate Judge

12